UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20265-CR-GOLD/BANDSTRA

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JAMES FRANKLIN MCCOY,

        Defendant.

_____/



## <u>REPORT AND RECOMMENDATION</u>

    THIS CAUSE is before the Court on Defendant's [James Franklin McCoy's] Motion to Suppress Physical Evidence (D.E. 17) filed on June 30, 2006.  Previously, all pretrial motions in this case were referred to the undersigned by the Honorable Alan S. Gold for appropriate proceedings pursuant to 28 U.S.C. § 636(b).  Accordingly, the undersigned conducted an evidentiary hearing on this motion on September 6, 2006.  Based on the facts as found herein and applicable law, and in consideration of oral argument of counsel for the parties, the undersigned recommends that Defendant's Motion to Suppress Physical Evidence be DENIED.



## Findings of Fact[1]

On April 24, 2006, Detectives Wayne Tillman and Hiram Suarez of the Miami-Dade Police Department, together with other law enforcement officers, attempted to locate and arrest fugitive Andre McWorter on a federal arrest warrant previously issued on underlying narcotics charges.  On that date, the law enforcement officers had information from a confidential source that McWorter had been seen with James Franklin McCoy (hereinafter "defendant") while entering apartment 9 at 415 N.W. 9th Street, Miami, Florida at about 1:00 p.m. The confidential source had previously provided reliable information to local law enforcement officers on 10-12 occasions over the previous 1-1 ½ years so that the police officers reasonably relied on the information he now provided concerning McWorter and his whereabouts on April 24, 2006.  Based on that information, the arrest team proceeded to the location to arrest McWorter on the outstanding arrest warrant.

Upon arrival, Detectives Hiram Suarez and Wayne Tillman, together with Special Agent Jason Stankiewicz and a second federal agent, proceeded to the front door of apartment 9.  Prior to knocking or otherwise announcing their arrival, defendant opened the front door and was immediately ordered out of the apartment by Detective Suarez. Detectives Suarez and Tillman both recognized defendant from prior police contacts and knew that he was a convicted felon on various state offenses.  Defendant was immediately taken into custody and detained by Special Agent Stankiewicz just outside of the apartment.

---

[1]These factual findings are based on the testimony of Detectives Hiram Suarez and Wayne Tillman of the Miami-Dade Police Department, and Special Agent Jason Stankiewicz of the United States Bureau of Alcohol Tobacco and Firearms.  No other witnesses were called to testify at the suppression hearing.

2

Meanwhile, Detective Suarez looked into the open front door of the apartment and saw all or a portion of a firearm lying on the floor of the front room ("living room") of the apartment approximately 6 feet from the open front door.[2] Detective Suarez immediately shouted "gun" to alert the other officers of the possibility of a dangerous situation. Detective Suarez then shouted "police" on several occasions before proceeding into the apartment to conduct a security sweep of the premises. Meanwhile, defendant was detained and handcuffed by Special Agent Suarez while the protective sweep was completed.

Detectives Suarez and Tillman, together with other law enforcement officers, proceeded into the apartment to conduct a protective sweep by looking in areas in which another person might be located. The officers conducted this sweep for their own safety and the protection of others, including defendant, at the scene. The officers found no one else inside the apartment. However, the officers did confirm the presence of the firearm, a chrome .357 magnum revolver, on the living room floor next to a couch. The officers also noticed, in plain view, substances believed to be unlawful narcotics (cocaine and marijuana) as well as drug paraphenalia in other locations throughout the premises.

Following the sweep, the officers left the apartment, secured the front door, and proceeded to apply for a search warrant to conduct a more thorough search of the

---

[2]The undersigned finds clear evidence that the firearm was observed in plain view by Officer Suarez from outside the open door of the subject apartment. Reaching this conclusion, the undersigned notes that Detective Wayne Tillman, standing behind Detective Suarez when the front door was opened, also spotted the firearm on the floor of the living room before entering the apartment. Thus, the undersigned finds no particular significance to the statement in Detective Suarez's arrest report that the firearm was first observed as he "was entering" the apartment.

premises. Meanwhile, defendant was arrested as a felon in possession of firearm. Defendant was also searched incident to his arrest during which keys and cash (between $2,500 and $3,000) was found on his person. Defendant was advised of his constitutional rights which he waived before any interrogation by the officers.

## ANALYSIS

Defendant moves to suppress all physical evidence seized from apartment 9 and his person on the grounds that the apartment was unlawfully entered by the officers without a search warrant and without either probable cause or exigent circumstances to allow for a warrantless entry. In defendant's view, Detectives Suarez and Tillman entered the apartment for the alleged purpose of conducting a search for fugitive McWorter without any evidence to support their belief that McWorter was inside the apartment or other circumstances justifying for the unlawful entry. Defendant further argues that his "lengthy detention" while a search warrant was obtained was also unlawful under Terry v. Ohio, 392 U.S. 1 (1968). Thus, defendant seeks to suppress all evidence found in the apartment and on his person pursuant to violations of the Fourth Amendment.

The government opposes defendant's motion on several grounds. First, the government argues that the initial entry into the apartment was lawful because exigent circumstances permitted entry for a protective sweep. The government lists danger of harm to the officers, their belief that a dangerous person was still inside, and the possibility that evidence including the firearm could be destroyed or removed as exigent circumstances in this instance. Factually, the government relies on the discovery of defendant inside the apartment, their knowledge of defendant's felony history, the

4

observation of a firearm in the apartment to form outside the front door, and the information that they had received from a reliable source concerning McWorter's entry into the apartment only a short time earlier.  The government further argues that defendant's initial detention was lawful in light of his presence in an apartment containing a firearm - particularly in light of his known criminal history at the time.  Lastly, the government argues that defendant's arrest was lawful based on probable cause to believe a crime had been committed by defendant (i.e., the unlawful possession of a firearm) after the protective sweep was conducted during which the firearm was again observed in plain view in the apartment otherwise unoccupied by any other persons.

A. The protective sweep

Reviewing the facts and relevant law, the undersigned finds no violation of defendant's Fourth Amendment rights under the circumstances of this case.  Stated otherwise, the undersigned finds that the law enforcement officers had the authority to enter the apartment for the purpose of conducting a protective sweep after finding defendant at the doorway of the apartment and observing a firearm lying on the floor of the room he exited.  Reaching this conclusion, the undersigned has reviewed the authority cited by the parties including Maryland v. Buie, 494 U.S. 325 (1990).  In that case, the Supreme Court held that a protective sweep of a premises is valid if it is a "quick and limited search of the premises... conducted to protect the safety of the officers or others... [and if] ... it is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." 494 U.S. at 327.  The Supreme Court authorized such a sweep because officers faced with risks are permitted "to take reasonable steps to ensure their safety after, and while making, [an] arrest." Id. at 334.  Moreover, the Supreme Court held

5

that officers have a legitimate interest "in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack" because the arrest takes place on the suspect's home `turf.'" Id. at 333.  The Buie case specifically held that a protective sweep is permissible if the searching officers possess a reasonable belief, based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officers or others.  Id. at 327, 334.

Here, the law enforcement officers conducting the protective sweep had a reasonable belief, based on specific and articulable facts, that the subject apartment harbored an individual posing a serious and substantial danger.  Police officers had been told by a source who had proved reliable in the past that a suspected fugitive had been seen entering the apartment with defendant only a few minutes earlier.  The figutive, believed to be Andre McWorter, had multiple arrests for violent crimes in the past and the warrant for his arrest was for outstanding narcotics charges.  In addition to this information, Detective Suarez had just observed a firearm, in plain view, lying only a few feet from the open doorway of the apartment.  These facts, considered together, reasonably warranted the officers in believing that the apartment harbored an individual  posing a danger to the officers at the scene.  Thus, the protective sweep was permissible under the Fourth Amendment. The officers proceeded to conduct a limited, protective sweep as authorized in Buie and thereafter secured the premises after which they obtained a warrant for a more

6

complete search.[3]

## B. Defendant's detention and arrest

The undersigned next finds that defendant was lawfully detained during the protective sweep and arrested only a few minutes later after officers confirmed the presence of a firearm in the apartment in an area just occupied by defendant. Federal law is well settled that police officers may stop and briefly detain persons in order to investigate a reasonable suspicion that they had or are about to engage in criminal activity. Terry v. Ohio, 392 U.S. 1, 30, (1968). Here, the police officers had at least a reasonable suspicion of criminal activity on defendant's part sufficient to briefly detain him after finding him in a location reported by a reliable informant and in an apartment with an observed firearm. See also Michigan v. Summers, 452 U.S. 692 (1981) (officers have authority to detain occupants of premises  while a proper search is conducted).  Thereafter, and within minutes of the protective sweep, defendant was lawfully arrested based on probable cause that he had illegally possessed a firearm.  Again, the officers knew that defendant was a convicted felon and confirmed that he had just occupied a room in which a firearm was located on the floor.

---

[3]Reaching this conclusion, the undersigned specifically rejects defendant's argument that Maryland v. Buie is distinguishable from the instant case because the officers had only a "generalized possibility" of McWorter's presence in the apartment and lacked "specific and articulable facts" which warranted a reasonable belief that the apartment was inhabited by a dangerous person at the time.  Here, as stated above, the officers had information from a reliable source that McWorter had been seen entering the apartment with defendant only a few minutes earlier.  Also, the officers had observed a firearm within six feet of the front door which contributed to specific and articulable facts justifying their entry into the apartment for a protective sweep.